## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

JOSEPH ROBERTS

       Plaintiff,

v.                                  Case No. 18-CV-699

INTEGRATED MAIL INDUSTRIES, LTD.

       Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS UNDER RULE 12(b)(6)

### INTRODUCTION

The plaintiff alleges that he was not paid for all of the time should have been paid as reflected on his time cards. His allegations are vague and consist of nothing more than a formulaic recitation of the elements. The complaint lacks any facts that go beyond the basic elements of the law, and it fails to demonstrate or "show" that a violation actually occurred. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). His claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

The plaintiff's claims that he is part of a Rule 23 and Fair Labor Standards Act collective action class similarly fail to establish a prima facie case. The plaintiff fails to compare himself with other class members in order to show that he can adequately represent the class. These claims too must be dismissed pursuant to Rule 12(b)(6).

## STATEMENT OF THE CASE

IMI is a full-service lettershop and direct mail company that offers comprehensive print, mail and data management services. (Aff. Kingsley ¶2). IMI helps its clients through all the steps necessary to send fully customized direct mail to a target population. (Aff. Kingsley ¶3).

IMI has a number of departments, led by different managers, including: (1) printing, (2) envelope converting, (3) inserting (including mechanic and material handlers), (4) bindery, (5) statement processing, (6) warehousing, (7) pre-press, (8) customer service, (9) facilities, (10) human resources, (11) accounting, (12) sales, and (13) executive. (Aff. Kingsley ¶4). All of IMI's departments have hourly employees except for (11) accounting, (12) sales, and (13) executive. (Aff. Kingsley ¶5).

The employees in the following departments on first shift work a daily schedule from 7:00 a.m. to 3:30 p.m.: (1) printing, (2) envelope converting, (3) inserting (including mechanic and material handlers), (4) bindery, and (6) warehousing. (Aff. Kingsley ¶6). The working hours for each of these departments are guided by a bell that alerts employees of their working hours. (Aff. Kingsley ¶6). A representative example of the bells guiding the first shift is as follows:

- 07:00AM start
- 09:30AM Morning break
- 09:38AM Two minute warning to return from break
- 09:40AM Morning break ends
- 11:30 AM lunch
- 11:58 AM Two minute warning to return from lunch
- 12:00 PM Lunch ends
- 02:00PM Afternoon break
- 02:08PM Two minute warning to return from break

- 02:10 PM Break ends
- 03:30PM End of shift

(Aff. Kingsley ¶6).

The hourly employees in the following departments work varied shifts and do not work a daily schedule guided by a bell: (7) pre-press, (8) customer service, (9) facilities, and (10) human resources. (Aff. Kingsley ¶7).

IMI does not require employees to punch out for lunch; IMI requires employees to punch out only if they leave the premises. (Aff. Kingsley ¶8).

The plaintiff, Joseph Roberts (hereinafter "Roberts"), is employed with IMI as an Envelope Machine Adjuster in IMI's Envelope Converting Department. (Aff. Kingsley ¶9). Roberts was originally hired on January 31, 2014, resigned on November 11, 2014, and then was rehired on August 22, 2016. (Aff. Kingsley ¶10).

Roberts is responsible for adjusting and maintaining the envelope converting equipment that produces envelopes for direct mailings. (Aff. Kingsley ¶11). The envelope converting machines must be continually adjusted and calibrated for every project; they must be constantly adjusted and maintained. (Aff. Kingsley ¶12). The position of Envelope Machine Adjuster is a highly skilled and physically demanding job that requires specialized skills and frequent physical activity. (Aff. Kingsley ¶13). IMI cannot operate its direct mail envelope production line without an Envelope Machine Adjuster. (Aff. Kingsley ¶14).

Roberts was and is IMI's only Envelope Machine Adjuster, as of August 2017. (Aff. Kingsley ¶15). IMI treats Roberts more favorably than all of IMI's other employees

because of his technical acumen and unique skill set as an envelope machine adjuster. (Aff. Kingsley ¶15). This is because Envelope Machine Adjusters are hard to find. (Aff. Kingsley ¶16).

IMI tried to hire another qualified Envelope Machine Adjuster to help Roberts from July of 2017 to April of 2018 and has not been able to find one. (Aff. Kingsley ¶17). In order to hire Roberts and incentivize him to work for IMI, IMI made many accommodations for Roberts that it did not provide to other employees. (Aff. Kingsley ¶18). Roberts was also given more favorable treatment after he was hired because IMI did not want to risk losing him. (Aff. Kingsley ¶18). Roberts is different from all of the other IMI employees in many ways, including the following:

| **Schedules and Working Hours**: <br><br> • Most employees in the production departments, including the envelope converting department, work from 7:00 a.m. to 3:30 p.m. <br> • All of these employees adhere to a bell system that denotes the times allotted for breaks and lunch times. | • Roberts' work day begins at 7:30 am instead of 7:00 am. <br> • Roberts made a special request, as a condition of his employment, to start his work day at 7:30 a.m. because he did not want to wake up early to come to work at 7:00 a.m. <br> • Due to the lack of available Envelope Machine Adjusters, IMI provided Roberts with a modified schedule as a condition of his employment. |
|---|---|
| **Financial Accommodations:** <br><br> • All other hourly employees were paid an hourly wage less than Roberts. | • Roberts is the highest paid hourly employee. <br> • During his recruitment, IMI paid for hotel accommodations until he found permanent housing for both |

| | |
|---|---|
| | his original and rehire dates; IMI paid for a rental car for Roberts for 19 days; and IMI paid Roberts' moving expenses on two occasions from Missouri to Wisconsin.<br>• IMI provided Roberts with a payroll advance for a security deposit for a rental property; Roberts agreed to reimburse the company with agreed upon deductions from his wages. |
| **Disciplinary Actions**:<br><br>• IMI requires all of its employees to adhere to its attendance policy. | • IMI requires Roberts to adhere to its attendance policy.<br>• Although Roberts has a problem with punctuality, IMI does not follow normal progressive disciplinary action due to the fact that he is the only full-time Envelope Machine Adjuster and IMI does not want to risk losing him.<br>• Since August of 2017, Roberts is IMI's only Machine Adjuster. |
| **Job Duties and Qualifications:**<br><br>• The majority of IMI's hourly workforce constitutes semi-skilled light industrial labor.<br>• The majority of the hourly workforce is not required to have the knowledge and ability to troubleshoot and maintain equipment.<br>• IMI has technicians and mechanics in other departments who fill those responsibilities, although none are qualified to work on an Envelope Converting Machine. | • Envelope converting equipment requires a highly knowledgeable, mechanically able employee with envelope converting machine experience to keep the machine operational and maintained due to its narrow tolerances.<br>• Roberts has over 20 years of experience as a Machine Adjuster. |

| Employment Dates: | |
|---|---|
| • IMI's workforce has start dates that vary significantly, but many started working for IMI prior to May 4, 2016. | • Roberts started working for IMI most recently on August 22, 2016. |

(Aff. Kingsley ¶18).

IMI makes every effort to pay its employees a fair wage. (Aff. Kingsley ¶19).  IMI has made and continues to make every effort to follow all wage laws in good faith and pay its employees for all hours they work. (Aff. Kingsley ¶20).  In the event IMI becomes aware that an employee works outside his or her normal schedule for any reason, IMI pays the employee for all hours worked. (Aff. Kingsley ¶21).  In the event an employee works in excess of forty hours in any given week, IMI pays the employee an overtime rate for all hours worked in excess of forty hours. (Aff. Kingsley ¶22).

## LEGAL STANDARD

### a) Legal Standard for a Motion to Dismiss.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard of Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, 'the defendant unlawfully harmed me' accusation. *Twombly*, 550 U.S. 544, 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S.,

at 555, 127 S.Ct. 1955. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* (citing *Twombly* at 557).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, <u>raising that possibility above a 'speculative level.'</u> " *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (emphasis added).

### b) Legal Standard for Class Certification Under Rule 23.

Under rule 23, the plaintiff must show the following elements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23. A failure to meet any one of these Rule 23 elements precludes certification of the alleged class. *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976).

The burden falls on the plaintiff to show by a preponderance of the evidence that all of the prerequisites to certify a class action have been satisfied. *See e.g., Cook Cty. Coll. Teachers Union, Local 1600, Am. Fed'n of Teachers, AFL-CIO v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972). A class action is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

If the plaintiff meets his burden under Rule 23(a), the court must then determine if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### c) Legal standard for a Collective Action under the FLSA.[1]

The FLSA permits collective action "against any employer ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). *Hatton v. Cablecom, LLC*, No. 14-CV-1459, 2015 WL 4113441, at *3 (E.D. Wis. July 8, 2015). Unlike a typical class action suit under Fed.R.Civ.P. 23, where an unwilling plaintiff must "opt out" of the class, a class action pursuant to Section 216(b) of the FLSA requires employees or former employees to "opt in" to the class, by filing a written consent to join the action. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579–80 (7th Cir.1982) (explaining differences between collective action under the FLSA and class action certified pursuant to Rule 23). District courts may, in their discretion, facilitate notice to potential plaintiffs to a FLSA collective action, to implement this "opt in" procedure. *See Hoffmann–LaRoche, Inc. v. Sperling,* 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Woods,* 686 F.2d at 580.

"The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that she is similarly situated to the potential class

---

[1] The legal standard here is largely copied verbatim from *Hatton v. Cablecom, LLC*, No. 14-CV-1459, 2015 WL 4113441 (E.D. Wis. July 8, 2015).

plaintiffs." *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D.Wis.2006). "[D]istrict courts in the Seventh Circuit have adopted a two-step approach." *Mares v. Caesars Entertainment, Inc. .*, No. 06–cv–60, 2007 WL 118877, at *2 (S.D. Ind. Jan.10, 2007); *see also Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D.Wis.2014) ("[M]ost courts, including this one, apply a two-step approach to certifying collective actions."). The first step is conditional certification. Although conditional certification is not a "mere formality," a plaintiff need only make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Bitner*, 301 F.R.D. at 357 (internal quotations and citations omitted). This standard is "fairly lenient"; it does not involve adjudicating the merits of the claims, nor does it entail the kind of rigorous analysis typical of class certification under Fed.R.Civ.P. 23. *Id.* (internal quotations and citations omitted).

In determining whether plaintiffs have met their burden, "'courts rely on the complaint and any affidavits that have been submitted.'" *Id.* at 357–58 (quoting *Austin*, 232 F.R.D. at 606). Although there is no formula for the type or amount of evidence necessary to make the modest factual showing, in this district, plaintiffs generally put forth multiple declarations from putative class members and/or deposition testimony from the parties. *See, e.g., Aguilera v. Waukesha Memorial Hospital, Inc.*, No. 13–CV–1245, 2014 U.S. Dist. LEXIS 114418, *13, 2014 WL 4080158 (E.D. Wis. Aug. 18, 2014) (certifying class where plaintiffs' allegations were supported by the declarations of three putative plaintiffs and the deposition testimonies of several managerial representatives from

defendant); *Brabazon v. Aurora Health Care, Inc.,* No. 10–CV–714, 2011 U.S. Dist. LEXIS 37057, *10, 2011 WL 1131097 (E.D. Wis. Mar. 28, 2011) (finding plaintiff made a modest factual showing when he supported his allegations with the declarations of nine putative plaintiffs and the deposition testimony of several of the defendant's corporate representatives).

Some courts in this circuit have found that for purposes of conditional certification, factual disputes should be resolved in the plaintiff's favor. *See, e.g., Bitner,* 301 F.R.D. at 358; *Berndt v. Cleary Bldg. Corp.,* No. 11–cv–791, 2013 WL 3287599, *7 (W.D. Wis. Jan.25, 2013) ("[W]here the parties' evidentiary submissions directly conflict, they will be resolved—for purposes of this order only—in plaintiffs' favor"). Other courts, however, have found that the court is not required to accept the plaintiffs' allegations as true. *See, e.g., Martinez v. Regency Janitorial Servs.,* No. 11–CV–259, 2012 U.S. Dist. LEXIS 8941, *4, 2012 WL 252230 (E.D. Wis. Jan. 26, 2012) ("While the court need not resolve the substantive merits of the plaintiffs' claims at this preliminary stage, the court is not required to accept the plaintiffs allegations as true."); *Howard v. Securitas Sec. Servs., USA,* 2009 U.S. Dist. LEXIS 3913, *10, 2009 WL 140126 (N.D. Ill. Jan. 20, 2009) ("In making a determination as to similarity, the court need not accept the plaintiff's allegations as true as it would with a motion to dismiss .") If the plaintiff satisfies this initial burden, the court conditionally certifies a class and authorizes notice to potential class members and the parties conduct discovery. *Kelly v. Bluegreen Corp.,* 256 F.R.D. 626, 629 (W.D. Wis. 2009).

The second step of the process occurs at the close of discovery, upon a motion for decertification from the defendant. *Bitner,* 301 F.R.D. at 358. At that point, "the court determines whether the plaintiffs are in fact similarly situated to those who have opted in." *Kelly,* 256 F.R.D. at 629. If "it becomes clear that the case is not suitable for collective treatment, the court then decertifies the collective action." *Bitner,* 301 F.R.D. at 358.

## ARGUMENT

### I. The plaintiff failed to establish a prima facie case that he and the alleged class were not paid a fair wage.

The allegations in the Complaint are vague and consist of nothing more than a formulaic recitation of the elements of the law. The complaint lacks any facts that go beyond the basic elements of the law, and fails to demonstrate or "show" that a violation actually occurred.

#### A. The plaintiff's allegation that IMI rounded time fails to 'show' that that he and his alleged class are entitled to relief.

The Complaint alleges that the plaintiffs were required to punch in as soon as they arrived to the Milwaukee Facility and it would take between 20 to 90 seconds to walk from the clock to their work station (Doc 1. at ¶10). The Complaint further alleges that the plaintiffs were required to perform work as soon as they arrived at their work stations until they departed from their work stations (Doc 1. at ¶12). The Complaint then asserts that the plaintiffs were sometimes compensated for the entire period of time they were punched in on the time clock, but that sometimes the compensable working time was adjusted by the plaintiffs' manager and resulted in the plaintiffs'

receiving credit for fewer hours than reflected on the plaintiffs' punch time (Doc 1. at ¶13).

What the complaint fails to assert, crucially, is that the employees performed work at all times they were "punched in" on the time clock. The complaint also fails to provide the reason management made adjustments to the plaintiff's time cards in any particular circumstance.

For example, if the plaintiff punched in on IMI's time clock immediately upon arrival to the Milwaukee Facility and then socialized in the break room for fifteen minutes before starting his shift, the fifteen minutes of socialization is not legally considered to be work 'suffered or permitted by the employer' and therefore is not compensable time. *See* 29 CFR 785.48(a) ("In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work."); 29 C.F.R. 785.9 (stating that compensable work excludes "preliminary" and "postliminary" activities prior or subsequent to the "workday"); *See also* WIS. ADMIN. CODE DWD 272.12(1)(a)(2) ("Workday," in general, means the period between "the time on any particular workday at which such employee commences their principal activity or activities" and "the time on any particular workday at which they cease such principal activity or activities.") *and* WIS. ADMIN. CODE DWD 272.12(e)(1)(c) (if [socializing] is merely a convenience to the employee and not directly related to their principal activities, it would be considered as a "preliminary" or "postliminary" activity rather than a principal part of the activity.)

Although the complaint asserts IMI had a 'rounding policy,' the complaint provides no information concerning the details of the rounding policy or the reason that the unnamed managers adjusted employee time cards. Further, the complaint fails to allege that any of the adjustments of employee time cards was for an invalid purpose. Simply put, the Complaint fails to assert what the rounding policy was and why it was illegal. *See, e.g.,* 29 CFR 785.48.

The Complaint fails to show any more than a 'mere possibility' of a violation because it fails to allege the reason for adjustments to the plaintiff's time card. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Fed. Rule Civ. Proc. 8(a)(2). *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citations omitted).

### B. The plaintiff's allegation that IMI did not pay its employees for compensable lunch breaks fails to 'show' that that he and his alleged class are entitled to relief.[2]

The Complaint alleges that the plaintiffs "*sometimes*" punched the time clock at the beginning and conclusion of their meal breaks. (Doc 1, Complaint at ¶18) (emphasis added). The Complaint further alleges that IMI would review employee time cards and see that an employee time "punched back in after less than 30 minutes after they punched out for lunch" but IMI would not compensate employees for the lunch period (Doc. 1, Complaint at ¶19).

---

[2] Although the plaintiff asserts he was interrupted by his manager during lunch, he does not assert that other employees were also interrupted by their managers.

Although the Complaint alleges that employee time cards reflected "punch time lunches" of less than 30 minutes, the Complaint fails to allege that the employees actually took less than a 30 minute lunch break. Nor does the complaint that IMI had a policy requiring employees to clock out during all lunch periods, as opposed to a policy requiring employees to clock out only in the event they left the premises.

Many employers, including IMI, have a policy that does not require employees to clock out during lunch. Instead, these employers, including IMI, require employees to clock out only when they leave the premises. Under this common practice, an employee's time card could reflect that that the employee punched out for only 15 to 20 minutes during the employee's lunch period, when in fact the employee took a much longer lunch period. For example, an employee who leaves the facility during his lunch break to purchase lunch outside the facility and then returns to the facility 15 minutes later to each his lunch on the premises for an additional 20 minutes would have a time card that reflected only a 15 minute break, even though the employee's break period was 35 minutes.

The Complaint fails to show any more than a mere possibility of a common lunch policy violation because it fails to allege that the employees' time cards accurately reflect the amount of time they took for a lunch break. Significantly, the fact that the complaint alleges IMI employees punched out for lunch only "sometimes," supports the inference that employees were not required to punch out during lunch and punched out only when they left the premises. (*See* Doc. 1, Complaint at ¶18). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Fed. Rule Civ. Proc. 8(a)(2). *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citations omitted).

### C. The Complaint fails to establish that IMI knew it violated any law.

The Complaint alleges that IMI "did not have any, let alone reasonable grounds for believing that its policies complied with the FLSA" (Doc. 1, Complaint at ¶37), but as described above, the Complaint does not provide any information as to what IMI's policy actually was or the manner of its implementation. The Complaint's allegation that IMI knew it violated the law is a bare assertion that amounts to nothing more than a "formulaic recitation of the elements" of a wage claim, and as such, the allegation is conclusory and not entitled to be assumed true. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009) (*citing Twombly,* 550 U.S., at 554–555).

## II.     The plaintiff failed to establish a prima facie case that he is a member of a Rule 23 class.

The plaintiff's complaint fails provide any information concerning his work schedule, working hours, job title, job duties, attendance history, etc. The only similarity he alleges, is that he and the other members of his potential class were "hourly paid employees of Integrated Mail." (Doc. 1, Complaint at ¶25).

### A. The plaintiff has not shown why joinder of all members is impractical as required under Rule 23(a)(1).

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). It is the plaintiff's burden to prove that joinder of all the class members is impracticable. *See*

*Valentino*, 528 F.2d at 978. The plaintiff devotes a mere two conclusory sentences in attempt to meet the threshold requirements of Rule 23(a)(1):

> "persons in the class identified above are so numerous that joinder of all members is impracticable . . . [because] Integrated Mail employed 70 hourly employees [and there may be over 100 members]." (Doc. 1, Complaint ¶27).

Neither conclusory statements that allege joinder to be impracticable nor speculative statements regarding size of the class are sufficient to meet the requirements of Rule 23(a)(1). *Id.* (upholding denial of a class certification based on conclusory allegations that joinder was impracticable and based on a speculative estimate of the size of the alleged class without any evidentiary documents or reports). Such allegations, devoid of fact, do not meet the requirements set forth in Rule 23(a)(1). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (stating that courts need not accept conclusory or generic allegations when determining if a class should be certified). A key purpose of Rule 23(a)(1) is to prevent members of classes from being unnecessarily deprived of their rights without a day in court. *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985) (upholding the circuit court's decision to deny class certification to a forty-nine member class because they could all be joined in a suit of named parties).

For these reasons, the plaintiff failed to allege any adequate justification as to why joinder of parties under Rule 20 or Rule 24 is impracticable. *See Simms v. Jones*, 296 F.R.D. 485, 500 (N.D. Tex. 2013) (rejecting class certification of 40 members because the plaintiffs did not present evidence that joinder was impracticable, that there was

significant geographic diversity among proposed class members, or that such diversity precluded joinder) (*citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

### B. The plaintiff has not shown his claim is typical of the claims of the alleged class as required under Rule 23(a)(3).

The plaintiff brings his complaint on behalf of himself and all others who are hourly employees of IMI employed by IMI on or after May 4, 2016. (Doc. 1, Complaint ¶26). Because the plaintiff worked on a different schedule in a different department for a different manager at a different wage and started working on a different day than all the other potential class members, the plaintiff's claims are not typical of the claims of members in the class and his class allegation must be dismissed. (*See* Aff. Kingsley ¶¶18).

### C. The plaintiff Joseph Roberts cannot show he can fairly and adequately protect the interests of the class.

The plaintiff has the burden of demonstrating that he is a member of the alleged class and that the interests of the absent class members will be sufficiently protected. §1765 The Representatives Will Protect the Interests of the Class—In General, 7A Fed. Prac. & Proc. Civ. § 1765 (3d ed.). Further, the court has an independent responsibility to make certain that the due process rights of the absent class members are protected. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481-482 (5th Cir. 2001).

The plaintiff is a highly skilled, highly compensated employee who worked on a different schedule than all of the other members of his alleged class. (*See* Aff. Kingsley ¶¶18). Importantly, the plaintiff seeks to represent a class dating back to May 4, 2016, but he was not even an IMI employee until August 22, 2016. (Aff. Kingsley ¶¶10).

There is a vast array of differences between the proposed class representative and all other alleged potential class members that precludes him from being able to fairly and adequately represent the alleged class.

### D. The plaintiff cannot show there are common questions of fact that predominate over the alleged class.

*i. The question of law or fact common to class members does not predominate over any questions affecting the plaintiff.*

Rule 23(b)(3)'s predominance criterion is even more demanding than the heavy burden the plaintiff faces in establishing the Rule 23(a) class certification requirements. *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013).

The plaintiff fails to allege sufficient similarities with other class members. As a corollary, he fails to acknowledge the differences in pay, job tasks, and working conditions between himself and all other class members. The plaintiff was a highly skilled employee who worked on his own schedule and was not disciplined despite issues with tardiness. (Aff. Kingsley ¶18). The majority of the other potential class members worked a set, determined schedule that was guided by a bell. (Aff. Kingsley ¶18). This alone creates differences that prevent any reliable methodology of determining damages of the plaintiff and the alleged class members. *Compare with Id.* at 1433 ("Questions of individual damage calculations will inevitably overwhelm questions common to the class."). Even setting the differences of the plaintiff and the proposed class aside, there are numerous differences within the potential class concerning damages, as they have different managers, job duties, job classifications and working hours. (Aff. Kingsley ¶¶4-6).

ii.   *A class action is not superior to other available methods for fairly and efficiently adjudicating the controversy.*

The purpose of a class action is to "achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *See* Amendments of Rules of Civil Procedure, Advisory Committee's Notes, 102-103.   A class action must be *superior* to, not just equal to, other alternative methods for handling the controversy.   Fed. R. Civ. Pr. 23(b)(3).   Unfortunately, class actions are often being used as a device for the solicitation of litigation and to run up costs for the defendant. *See Buford v. American Finance Co.*, 333 F. Supp 1243, 1251 (N.D. GA 1971) (finding that "many claims which simply did not exist have been brought to life by our courts through the judicial act of allowing a class action to be maintained").

IMI does not have a history of complaints pertaining to its treatment of employees and the plaintiff would be hard pressed to create a class of 70 IMI employees who were not paid a fare wage as alleged in his complaint.   The plaintiff has further failed to provide any justification in his complaint as to why other "similarly situated" individuals who feel they may have a claim could not intervene under Rule 20 or 24. *Sch. Dist. of Philadelphia v. Harper & Row Publishers, Inc.*, 267 F. Supp. 1001, 1004 (E.D. Pa. 1967).   Absent an adequately alleged justification, the class action allegation in the plaintiff's complaint seems to serve the sole purpose, whether intended or not, of soliciting litigation and running up costs.

### III. The plaintiff failed to establish a prima facie case that he and the alleged class are sufficiently similar to proceed with a FLSA Collective Action.

At this first stage—conditional class certification—the inquiry is whether Roberts has shown that he is similarly situated to the potential class plaintiffs. Roberts alleges that IMI maintained two policies common to all employees that violated the FLSA. Roberts alleges that IMI (1) rounded time on employee time cards; and (2) deducted a half hour for lunch from an employee's time cards, even if the lunch break was interrupted.

An automatic policy, standing alone, is an insufficient common denominator to justify a collective action. *Hatton v. Cablecom, LLC*, No. 14-CV-1459, 2015 WL 4113441, at *7 (E.D. Wis. July 8, 2015). The plaintiff has not submitted any affidavits or declarations from other employees that they are similarly situated and subjected to a policy that violates the Fair Labor Standards Act. Nor has the plaintiff alleged that he has any personal knowledge that any other specific employee was not paid a fair wage. *See Hatton v. Cablecom, LLC*, No. 14-CV-1459, 2015 WL 4113441, at *8 (E.D. Wis. July 8, 2015).

The bare allegations in the plaintiff's complaint without any accompanying affidavits from other employees is not sufficient to demonstrate a common policy or plan that violates the FLSA, nor is it sufficient to show that the employee is similarly situated to other employees. *See Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1046 (N.D. Ill. 2003) (affidavits from two out of fifty employees does not rise to the level of common policy or plan that the company violated the FLSA); *Rappaport v. Embarq Management Co.*, 2007 WL 4482581, at *4 (M.D. Fla. Dec. 18, 2007) (affidavits from six

employees does not demonstrate a companywide national policy of failure to pay overtime). A "demonstrable lack of interest in a collective action is a strike against certification." *Hatton v. Cablecom, LLC*, No. 14-CV-1459, 2015 WL 4113441, at *6 (E.D. Wis. July 8, 2015) (citations omitted).

Again, as stated previously, the plaintiff fails to allege sufficient similarities with other class members anywhere in his complaint. As a corollary, he fails to acknowledge the differences in pay, job tasks, and working conditions between himself and all other class members. (*See* Aff. Kingsley ¶18). The plaintiff was a highly skilled employee who worked on his own schedule and was not disciplined despite issues with tardiness. (Aff. Kingsley ¶18). The majority of the other potential class members worked a set, determined schedule that was guided by a bell. (Aff. Kingsley ¶18). This alone establishes a key difference between the plaintiff and the other alleged class members. Even setting the differences of the plaintiff and the alleged class members aside, there are still many differences among all of the other potential class members, as they all have different managers, job duties, job classifications and working hours. (Aff. Kingsley ¶¶4-6).

The plaintiff's failure to allege sufficient similarities among himself and other class members, is insufficient to establish a prima facie case for a collective action. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009) (*citing Twombly,* 550 U.S., at 554–555).

## CONCLUSION

For the foregoing reasons, the defendant Integrated Mail Industries, Ltd. respectfully requests that the plaintiff's complaint be dismissed.

Dated at Milwaukee, Wisconsin this May 31, 2018.

<div style="margin-left:40%">

Respectfully submitted,
PADWAY & PADWAY, LTD.
Attorneys for the defendant.

By: *Aaron DeKosky*
    Aaron A. DeKosky
    SBN: 1081404

</div>

**P.O. ADDRESS:**
Padway & Padway, Ltd.
633 W. Wisconsin Avenue
Suite 1900
Milwaukee, WI 53203

Phone: (414) 277-9800
Fax:     (414) 277-0189
adekosky@padwaylaw.net